IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EQUIP FOR EQUALITY, INC.    )
                               )
      Plaintiff,           )     **No. 03 C 0797**
                               )
      v.                 )     **Magistrate Judge Morton Denlow**
                               )
INGALLS MEMORIAL HOSPITAL,    )
                               )
      Defendant.      )

**DOCKETED**
**AUG 21 2003**

PLAINTIFF EQUIP FOR EQUALITY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

# FILED

AUG 19 2003

MAGISTRATE JUDGE
MORTON DENLOW

**Dated: August 19, 2003**

Byron L. Mason
Equip for Equality, Inc.
11 East Adams Street
Suite 1200
Chicago, Illinois 60603
312/341-0022

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **EQUIP FOR EQUALITY, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 03 C 0797** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **INGALLS MEMORIAL HOSPITAL** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S TABLE OF CONTENTS

PLAINTIFF EQUIP FOR EQUALITY'S
MOTION FOR SUMMARY JUDGMENT......................................................I

PLAINTIFF EQUIP FOR EQUALITY'S RULE 56.1 (a)
STATEMENT OF MATERIAL FACTS........................................................II

PLAINTIFF EQUIP FOR EQUALITY'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT...............................................................................................III

EXHIBITS...................................................................................................IV

    A.    CORRESPONDENCE DATED FEBRUARY 22, 2002

    B.    CORRESPONDENCE DATED AUGUST 6, 2002

    C.    CORRESPONDENCE (WITH ATTACHMENTS) FROM INGALLS DATED SEPTEMBER 27, 2002

    D.    CORRESPONDENCE (WITH ATTACHMENTS) DATED MAY 13, 2003

    E.    COMPLAINT

    F.    DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

G.    PLAINTIFF'S ANSWER AND AFFIRMATIVE DEFENSES

H.    DEPOSITION OF CATHERINE JOSEPH

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EQUIP FOR EQUALITY, INC.    )
                                  )
            Plaintiff,    )    **No. 03 C 0797**
                                  )
    v.                   )    **Magistrate Judge Morton Denlow**
                                  )
INGALLS MEMORIAL HOSPITAL,    )
                                  )
            Defendant.    )

FILED
AUG 18 2003
CLERK, MICHAEL W. DOBBINS
U.S. DISTRICT COURT

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff EQUIP FOR EQUALITY, INC. by Byron L. Mason, one of its Senior Attorneys, and moves this Honorable Court to enter summary judgment in favor of Plaintiff and against Defendant Ingalls Memorial Hospital. In support of its motion, Plaintiff submits the attached memorandum of law in support of motion for summary judgment.

EQUIP FOR EQUALITY, INC.

By: _Byron L. Mason_
       Byron L. Mason

Byron L. Mason
EQUIP FOR EQUALITY, INC.
11 East Adams
Suite 1200
Chicago, Illinois 60603
312-341-0022

*FILED*

*AUG 1 9 2003*

*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

| | | |
|---|---|---|
| **EQUIP FOR EQUALITY, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 03 C 0797** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **INGALLS MEMORIAL HOSPITAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

*DOCKETED*

*AUG 2 1 2003*

### PLAINTIFF'S RULE 56.1(a)(3)
### STATEMENT OF MATERIAL FACTS

Plaintiff, Equip for Equality (hereinafter "EFE"), by and through one of its Senior Attorneys, Byron L. Mason, hereby submits the following Statement of Material Facts as to which there is no genuine issue and which entitles Plaintiff to judgment as a matter of law, in accordance with Rule 56.1(a)(3) of the United States District Court for the Northern District of Illinois:

### BACKGROUND/PROCEDURAL ISSUES

1. EFE is the Governor designated, federally-funded, Protection & Advocacy system for persons with disabilities residing in Illinois. EFE has federal and state authority to enter into facilities that provide care and treatment to persons with mental illness. The primary office for EFE is in Chicago, Illinois.

2. Defendant Ingalls Memorial Hospital (hereinafter "Ingalls") is a private hospital located in Harvey, Illinois.

3. Jurisdiction and venue are proper in the United States District Court for the Northern District of Illinois.

14

## FACTS CONCERNING PLAINTIFF'S ALLEGATIONS

4.      In a letter dated February 22, 2002, EFE made a written demand for direct physical access to the psychiatric unit at Ingalls Hospital (Exhibit A).

5.      Ingalls refused to grant EFE's written demand for access to the psychiatric unit at the hospital.

6.      Several months later, on August 6, 2002, EFE made another written demand for access to the psychiatric unit at Ingalls (Exhibit B).

7.      On or about September 13, 2002, authorized representatives of EFE went to Ingalls for the purpose of obtaining direct physical access to the psychiatric unit, speaking with patients and speaking with employees of the hospital. They were met by Ms. Catherine Joseph, who is the Behavioral Health Manager at Ingalls.

8.      There are two in-patient psychiatric units and a number of out-patient psychiatric units at Ingalls, (Joseph dep. pg. 11).

9.      Both in-patient and out-patient facilities are located at the Wyman-Gordan Pavilion of the hospital (Joseph dep. pgs. 11-12).

10.     The in-patient units are located on the second floor of the pavilion. The out-patient units are located on the first floor of the same pavilion (Joseph dep. pg. 12).

11.     The in-patient units are locked units requiring a key to gain access (Joseph dep. pg. 14).

12.     The out-patient units are not locked (Joseph dep. pg. 16).

13.     On or about September 13, 2002, Ingalls, though Ms. Joseph, refused to allow the EFE representatives onto the in-patient psychiatric unit.

2

14. On September 27, 2002, the Associate General Counsel for Ingalls, Donna Flynn, sent a letter to EFE addressing EFE's demand for access to the psychiatric unit at Ingalls. In the letter, Ingalls asserted that "we are under no legal obligation to provide the access you demand" (Exhibit C).

15. Ingalls' position is that EFE is not entitled to direct physical access to the in-patient psychiatric unit absent the specific request of a patient, a court order, or as part of an investigation. (Joseph dep., pgs. 28-29; also pg. 38)

16. 17. To date, Ingalls has refused to allow authorized representatives of EFE onto the in-patient psychiatric unit at Ingalls.

Respectfully submitted
Equip for Equality

By: _____
Byron L. Mason

Equip for Equality, Inc.
11 East Adams Street
Suite 1200
Chicago, Illinois 60603
Telephone: 312/341-0022

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 1 9 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

EQUIP FOR EQUALITY, INC. )
)
      Plaintiff, )   No. 03 C 0797
)
v. )   Magistrate Judge Morton Denlow
)
INGALLS MEMORIAL HOSPITAL, )   **DOCKETED**
)
      Defendant. )   AUG 2 1 2003

## PLAINTIFF'S MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, **EQUIP FOR EQUALITY**, by Byron L. Mason, one of its Senior

Attorneys, hereby submits the following Memorandum of Law in support of its Motion

for Summary Judgment.

## I.    INTRODUCTION AND PROCEDURAL POSTURE OF THE CASE

Plaintiff Equip for Equality ("EFE") is the Governor designated and federally

funded Protection and Advocacy system (P&A system) for persons with disabilities

residing in Illinois. In accordance with its function as the P&A system for Illinois, EFE

has broad federal and state authority to carry out its duties and responsibilities.

On or about February 3, 2003, EFE filed a Complaint against Defendant Ingalls

Memorial Hospital ("Ingalls"). The facts are not in dispute. The Complaint seeks

declaratory and injunctive relief as a result of Ingalls' refusal to grant authorized

representatives of EFE physical access to the in-patient psychiatric unit at Ingalls, and

Ingalls' refusal to allow EFE representatives to speak with patients or employees at the

in-patient psychiatric units at Ingalls. As part of its statutory mandate to provide

information and training to persons with mental illness in facilities, EFE had initiated an outreach program to private psychiatric hospitals, and hospitals with psychiatric units. Despite clear legislative authority, Ingalls denied EFE access. Since the facts are not in dispute and the only issue for the court to decide concerns the legal issue of the proper interpretation of the statutes and regulations that provide for the access authority of EFE and other P&A systems, this matter may be properly resolved by a motion for summary judgment.

Defendant served its Answer and Affirmative Defenses to the Complaint on March 25, 2003. EFE filed its Answer to Defendant's Affirmative Defenses on May 2, 2003. Discovery in this matter closes on August 31, 2003. The facts upon which EFE relies in support of its motion for summary judgment are set forth in detail in the accompanying Rule 56.1(a)(3) Statement of Material Facts.

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986*).* In determining whether any genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S. Ct. 2505 (1986). Nonetheless, once the moving party establishes that there are no genuine factual issues, the non-moving party must present specific facts showing that a "genuine issue" is

actually open for trial. *Celotex*, 477 U.S. at 322-26, 106 S. Ct. at 2552-54; *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 54, 1256 (7th Cir. 1990).

A non-moving party may not create an issue of material fact through conjecture or speculation as to what evidence might be adduced at trial, *Gatling v. Atlantic Richfield Company*, 577 F.2d 185 (2d Cir. 1978) (*cert. denied* 9 U.S. 861). Neither the mere existence of some alleged factual dispute between the parties, *Anderson v. Liberty Lobby, Inc.* 477 U. S. 242, 106 S. Ct. 2505 (1986), nor the existence of some "metaphysical doubt as to the material facts," *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, (1986) are sufficient to defeat a motion for summary judgment. The mere contention that an issue of fact exists is insufficient in the absence of specific facts showing a genuine issue for trial. *Posey v. Skyline, Corp.*, 702 F.2d 102 (7th Cir. 1983), *cert denied*, 104 S. Ct. 392 (1983).

In its presentation of specific factual information, the non-moving party must submit materials of evidentiary quality, which demonstrate the existence of genuine issues of material fact, *Winskunas v. Birnbaum*, 23 F.3d 1264 (7th Cir. 1994). Materials of evidentiary quality are admissible documents or attested testimony such as that found in depositions or affidavits – demonstrating the existence of genuine issues of material fact. *Winskunas*, 23 F.3d at 1267.

## III. DISCUSSION OF THE LAW GOVERNING THE ACCESS AUTHORITY OF STATE PROTECTION & ADVOCACY SYSTEMS

EFE and other state-designated organizations that are part of the P&A system for disabled and mentally ill persons have broad federal and state authority to accomplish their function. P&A system access authority is provided for at 42 U.S.C. § 10801 et seq., known as the Protection and Advocacy System for Individuals with Mental Illness Act

3

("PAIMI Act"). P&A system access authority is also provided for in the Code of Federal Regulations at 42 C.F.R. 51.1 et seq. State P&A system access authority is provided for at 405 ILCS 45.01 et seq. ("Illinois PAIMI Act"). The purposes of the PAIMI Act are as follows:

(1) To ensure that the rights of individuals with mental illness are protected, and

(2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will –

    (A) protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes; and

    (B) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.

Addressing the issue of access authority, Section 10805 of the PAIMI Act provides that a P&A system shall have certain rights. Under subsection (a)(1)(B), the statute specifically provides that the P&A system established within a state shall "have access to facilities in the state providing care or treatment."

Section 10802 of the PAIMI Act defines the kinds of "facilities" that are included within the meaning of the PAIMI Act. Section 10802(3) defines "facilities" as follows:

> The term "facilities" may include, but need not be limited to, hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and persons.

Significantly, a review of the above section shows that the definition of facilities specifically encompasses hospitals.

The statutory authority of a P&A system such as EFE is further defined in Part 51 of Section 42 of the Code of Federal Regulations. Since federal regulations have the

4

force of law, they may create enforceable rights, *Save Our Valley v. Sound Transit*, 335 F. 3d 932 (9th Cir. 2003). Part 51.42, which specifically addresses the access authority of a P&A system, provides as follows:

§ 51.42 Access to Facilities and Residents.

(a) Access to facilities and residents shall be extended to all authorized agents of a P & A system.

(b) A P&A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents. The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. This authority shall include the opportunity to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. Such access shall be afforded, upon request, by the P&A system when:

    (1) An incident is reported or a complaint is made to the P&A system;

    (2) The P&A system determines there is probable cause to believe that an incident has or may have occurred; or

    (3) The P&A system determines that there is or may be imminent danger of serious abuse or neglect of an individual with mental illness.

(c) In addition to access as prescribed in paragraph (b) of this section, **a P&A system shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours.** (emphasis added) Residents include adults or minors who have legal guardians or conservators. P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a resident's request to terminate an interview. This access is for the purposes of:

    (1) **Providing information and training on, and referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.**

(2) **Monitoring compliance with respect to the rights and safety of residents; and**

(3) **Inspecting, viewing and photographing all areas of the facility, which are used by residents or are accessible to residents."**

A plain reading of the above statute demonstrates that it provides a P&A system with clear authority to enter into a hospital or other facility such as Ingalls for several specific reasons. Under the statute, a P&A system has access authority when an incident is reported or a complaint is made to the P&A system. There is also access authority when the P&A system determines that there is probable cause to believe an incident has or may have occurred. Further, the P&A system is entitled to access when it determines that some imminent danger is present.

Most importantly for the case at hand, Subsection (c) provides for access authority that is not contingent upon any event. Access under subsection (c) is for various purposes, including providing information and training, monitoring facility compliance with regard to the rights and safety of residents, and inspecting all areas of the facility.

Based on a plain reading of the above statutes and regulations, it is clear that EFE has federal authority to enter into various facilities, including the in-patient psychiatric unit at Ingalls, and that Ingalls' denial of access has no basis in law.

EFE's right to direct physical access is also clear under the "Illinois PAIMI Act," 405 ILCS 45/0.01 et seq. Section 45/1 of the Illinois PAIMI Act provides in relevant part as follows:

## 45/1.   Purpose

"§ 1. Purpose. The Governor shall designate an agency to administer the protection and advocacy system for mentally ill persons, pursuant to the federal Protection and Advocacy of Mentally Ill Individuals Act of 1986 The agency shall be independent of any agency which provides disability-related services (other than advocacy services), including treatment, rehabilitation, guardianship or habilitation. The agency may receive and expend funds to protect and advocate the rights of mentally ill persons.

The powers and duties of the P&A system pursuant to the Illinois PAIMI Act are set forth at Section 45/3 of the Illinois PAIMI Act, which provides in relevant part as follows:

**(B) The agency shall have access to all mental health facilities** (emphasis added) as defined in sections 1-107 and 1-114 of the Mental Health and Developmental Disabilities Code,[3] all facilities as defined in Section 1-113 of the Nursing Home Care Act, [4] all facilities as defined in Section 2.06 of the Child Care Act of 1969, as now hereafter amended, [5] and all other facilities providing care or treatment to mentally ill persons. **Such access shall be granted for the purposes of meeting with residents and staff, informing them of services available from the agency, distributing written information about the agency and the rights of persons who are mentally ill, conducting scheduled and unscheduled visits, and performing her activities designed to protect the rights of mentally ill persons.** (emphasis added; also, the footnotes contained in the statute have been omitted)

The Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 et seq.) defines "mental health facility" at Section 1-114 of the Code (405 ILCS 5/1-114) as follows:

### 5/1-114.   Mental Health Facility

§ 1-114. "Mental health facility" means any licensed private hospital, institution, or facility or section thereof, and any facility, or section thereof, operated by the State or a political subdivision thereof for the treatment of persons with mental illness and includes all hospitals, institutions, clinics, evaluation facilities, and mental health centers which provide treatment for such persons.

The PAIMI Act, Code of Federal Regulations and the Illinois PAIMI Act provide a clear and detailed framework for the access authority that is granted to EFE.

7

Inexplicably, Ingalls refuses to honor EFE's right to direct physical access to its in-patient psychiatric units. Ingalls is in clear violation of the federal and state authority that is granted to EFE.

## IV. THERE ARE NO FACTUAL ISSUES TO BE DECIDED IN THIS CASE AND EFE IS ENTITLED TO SUMMARY JUDGMENT ON THE LEGAL ISSUE BEFORE THE COURT.

The testimony of Catherine Joseph (Joseph) clearly and unequivocally demonstrates that there are no factual issues to be resolved in this case, and that the sole issue to be decided concerns the legal interpretation of EFE's access authority. Joseph, who is the Manager of the Department of Psychiatry at Ingalls, was deposed on July 9, 2003. Her testimony revealed that she is responsible for supervising a total of approximately 50 employees at the hospital. Joseph testified that Ingalls is a private facility and that there are two inpatient units at the hospital. The inpatient units are located on the second floor of the Wyman Gordon Pavilion of the hospital (Joseph dep. pg. 12). According to Joseph, both of the inpatient units are locked, which means that one must have a key in order to gain access. (Joseph dep. pg. 14) Access is limited to assigned staff and the physicians that treat patients in the inpatient unit. (Joseph dep. pg. 15)

Joseph testified that she was aware that sometime in October of 2001 representatives of EFE made a request for direct physical access to the psychiatric units (Joseph dep. pg. 17). Joseph denied the representatives access to the inpatient units (Joseph dep. pg. 20). In denying access, Joseph made a distinction between the in-patient and out-patient units based on confidentiality and privacy concerns, as well as her previous practice and the advice of counsel (Joseph dep. pg. 21).

8

Joseph acknowledged that she had only a limited understanding concerning the function of EFE. At pages 23-24 of her deposition, Joseph was asked about her knowledge of EFE:

**Q.** "Let me ask you this question, Ms. Joseph. Do you have any knowledge or understanding concerning the function of Equip for Equality?

**A.** "Limited."

**Q.** "When you say limited, what do you mean?"

**A.** "I have a limited understanding of the function."

**Q.** "What is that limited understanding?"

**A.** "My understanding is that it is an advocacy group for the mentally ill."

**Q.** "Now, where did you get that understanding, or how did you come to have that understanding?"

**A.** "I'm not certain."

Ingalls could easily have obtained information concerning EFE and the nature and extent of its authority. EFE publishes extensive written materials, has a website, and has staff dedicated to fielding questions from the public. Instead, Ingalls declined to avail itself of any source of information, and chose to deliberately thwart representatives of EFE in their efforts to obtain access. Ingalls' refusal is made all the more puzzling in light of the efforts made by EFE to educate the hospital of the basis of its authority. In a letter dated February 22, 2002 to the general counsel for Ingalls, EFE explained the basis of its access authority in detail. (See Exhibit "A").

Ultimately, Joseph testified that it was her belief, based upon her previous policies and practices, as well as the legal advice she obtained from attorneys for the hospital, that

representatives of EFE were only entitled to access to the in-patient psychiatric unit under 3

limited conditions. At pages 28-29, Ms. Joseph described these conditions:

**Q.** "Ms. Joseph, is it fair to say that your understanding of the right of Equip for Equality to have direct physical access to the inpatient portion of the psychiatric unit is limited to three specific circumstances?"

**A.** "Essentially, yes."

**Q.** "Can you tell me what those are again?"

**A.** "At the request of the specific patient and/or guardian, with a court order and/or during the investigation.

**Q.** "Its actually based on three things. Your previous knowledge and experience and practices, the advice that you received from counsel and your knowledge of the mental health code?"

**A.** "Correct."

**Q.** "Did you base this determination on anything else?"

**A.** "No."

During her deposition, Joseph reiterated that the position she took relative to the

denial of access to EFE representatives was the position of the hospital. At page 38 of

her deposition, Joseph stated as follows:

**Q.** "Let's talk about the actual physical meeting. Do you remember how many people from Equip for Equality came to the hospital?"

**A.** "Two."

**Q.** "Is it fair to say that it was still your understanding and opinion at that time, that representatives of Equip for Equality were not entitled to have direct physical access to the psychiatric – strike that. To the inpatient portion of the psychiatric unit absent either, No. 1 a court order, an investigation or a request by a patient?

**A.** "It has nothing to do with opinion. That was my understanding based on what we previously discussed."

**Q.** "That was your understanding. To your knowledge, was that also the understanding of the hospital?"

**A.** "Yes."

Given Joseph's testimony, there is no dispute concerning what occurred. The only issue is whether the legal position taken by Ingalls is correct concerning the circumstances under which EFE, through its authorized representatives, is entitled to direct physical access to the inpatient portion of the psychiatric unit at Ingalls.

With regard to this important question, Ingalls' position completely ignores the federal statute and the federal regulations addressing the issue, as well as the applicable state authority. 42 CFR 51.42 (c), which, is set forth above on pages 5-6, provides for a P&A system to have access during reasonable times to provide information and training to residents, monitor compliance with protections for the rights and safety of residents, and to inspect the physical areas of the facility. Clearly, EFE had a right of access beyond the three instances relied upon by Joseph. Section 10802 of the PAIMI Act, which discusses what facilities are encompassed within the Act, specifically names hospitals as a covered facility under the Act. Section 10805 (a)(3) of the PAIMI Act also provides that a P&A system shall have access to facilities in the state providing care or treatment.

EFE access authority is equally clear under the Illinois PAIMI Act. Section 45/1 provides for the Governor to designate an agency to administer the protection and advocacy system for mentally ill persons. Moreover, the statute clearly provides that the P&A system shall be granted access for various purposes, including conducting scheduled and unscheduled visits and meeting with residents and staff.

At the status hearing in this case on May 13, 2003, counsel for Ingalls questioned whether EFE was in fact the designated P&A system for Illinois and therefore entitled to the relief sought. On the same day, EFE provided counsel for Ingalls with a copy of the

11

Executive Order designating it as the P&A system for Illinois, as well as a copy of the Articles of Amendment whereby the organization's name was changed from Protection and Advocacy, Inc. to EFE (See Exhibit "D"). The evidence is clear that Ingalls does not have any legal basis for its refusal to allow representatives of EFE direct physical access to the in-patient psychiatric unit.

## V. THE FEDERAL ACCESS AUTHORITY EXTENDED TO EFE PREEMPTS THE STATE AUTHORITY RELIED ON BY INGALLS.

One of the bases for relief in *Oklahoma Disability Law Center v. Dillon*, 879 F. Supp. 110 (N.D. Okla. 1995) was that the applicable state authority was preempted to the extent that it was in conflict with federal law. In rejecting the defendant's reliance on state law, the *Dillon* court stated as follows:

> Given the meaning of the word "access" as used in *42 U.S.C. § 10805*, recourse to *76 O.S. § 19* in this instance would act as an obstacle to the fulfillment of the Congressional objectives of the PAMII and is preempted to the extent that it impairs the ODLC's ability to obtain the records it seeks without a court order 879 F. Supp. at 1112.

In the case before the court, Joseph testified that she believed the position of the hospital to be supported by the State Mental Health Code, as demonstrated by the following testimony at pages 71-72 of her deposition:

**Q.** "And your belief is that the presence of authorized representatives of Equip for Equality would, in fact, violate the confidentiality rights of those persons that might be in-patients at a given time?"

**A.** "Correct."

**Q.** "I believe that you indicated that one of the sources you based that understanding on was the Illinois Mental Health Code?"

**A.** "Correct."

Subsection (i) of 42 CFR 51.31 provides that **"A P&A system may exercise its authority under State law where the authority exceeds the authority required by the Act. However, State law may not diminish the required authority of the Act."** (emphasis added). To the extent that Ingalls based its refusal to allow EFE direct physical access to its in-patient psychiatric units on the Illinois Mental Health Code or some other state statute, the state authority is clearly preempted where it conflicts with EFE's federal authority under the PAIMI Act and the Code of Federal Regulations. With regard to the latter, the relationship between P&A system access authority and the Health Insurance Portability and Accountability Act of 1996 (HIPAA) is addressed at 45 CFR 164.512(a)(1), which provides that a covered entity "may use or disclose protected health information to the extent that such use or disclosure is required by law…" Disclosures of information to P&A systems pursuant to their access authority clearly are disclosures that are clearly required by law. Further still, the Illinois PAIMI Act provides another basis for rejecting Ingalls' contention since it specifically grants EFE access to facilities such as Ingalls, and would be controlling over less specific state confidentiality provisions.

## VI. INGALLS' AFFIRMATIVE DEFENSE DOES NOT AFFECT EFE'S ENTITLEMENT TO SUMMARY JUDGMENT

In its Answer to the Complaint, Ingalls asserts the following as its Affirmative Defense:

**"1. The federal PAIMI Act, upon which EFE bases this action, does not provide a private right of action."**

Defendant's contention that the PAIMI Act does not provide a private right of action is not supported either by the language or the spirit of the Act. Section 10805(a)(1)(B) of the Act provides that a system established in a state to protect and advocate the rights of individuals with mental illness shall **"pursue administrative,**

**legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the state"** (emphasis added).

P&A systems have successfully enforced their statutory authority through a private right of action in numerous cases involving various issues. In *Alabama Disabilities Advocacy Program v. Tarwater Developmental Center*, 97 F.3d 492 (11th Cir. 1996), the P&A system for the state of Alabama sought access to records of residents that had died while in an intermediate care facility that housed persons with mental illness. The district court ruled that the P&A system was entitled to the records, and the facility appealed. In affirming the decision of the district court, the court stated "It is clear that the Act provides express authority for P&As to gain broad access to records, facilities and residents to ensure that the Act's mandates can be effectively pursued." 97 F.3d at 497

In *Michigan Protection & Advocacy Service, Inc. v. Miller*, 849 F.Supp.1202 (W.D. Mich. 1994), the court ruled that the Michigan P&A system had the authority under the PAMI Act, inter alia, to access records and facilities of the state department of social services. In *Disability Law Center v. Dillon*, 879 F.Supp.1110, the defendant, a for-profit psychiatric institution, refused to provide documents pertaining to former patients. The documents concerned allegations of abuse and neglect while the patients were confined at the facility. Defendant argued that it did not have any obligation to provide the records absent a court order, or by a requirement imposed by state statute, which defendant asserted was not present.

In rejecting the defendant's argument, the court in *Dillon* observed that:

the PAMII directs Systems such as ODLC to have ready access to an institution's psychiatric records so as to serve effectively as an advocate for those individuals

14

with mental illnesses. Defendant's interpretation of *760.5.* § 19 thwarts the purposes of the PAMII and serves as an obstacle to the accomplishment and execution of the PAMII." (*879F. Supp. at 1111*)

In *Wisconsin Coalition for Advocacy v. Czaplewski*, 131 F.Supp.2d 1039 ( E.D. Wisc. 2001), the court ruled that the P&A system for the state of Wisconsin was entitled to access records relating to the deaths of two mentally ill individuals that had resided in a private facility. In enjoining the facility from refusing to provide the records sought by the P&A system, the court observed that "Indeed, a cursory review of 42 U.S.C § 10802 would reveal that Congress fully intended any facility, whether it be publicly or privately owned, to be subject to the provisions of the PAIMIA." (131 F. Supp at 1050)

Ingalls' argument simply does not have any basis in law. Ingalls' conduct, if allowed to continue, would effectively render the federal access authority granted to P& A systems such as EFE meaningless

## VII. **CONCLUSION**

Joseph's testimony clearly establishes that there are no genuine issues of material fact for this court to consider, and that the only issue for the court to decide concerns the proper interpretation of EFE access authority. A plain reading of the PAIMI Act, the applicable sections of the Code of Federal Regulations, and the Illinois PAIMI Act all conclusively demonstrate that EFE is entitled to direct physical access to the inpatient psychiatric units at Ingalls. Therefore, this court should grant the injunctive and declaratory relief requested by EFE.

Wherefore, for the reasons discussed above, Plaintiff respectfully requests that this Court enter summary judgment in favor of EFE and against Defendant Ingalls.

Respectfully submitted,
Equip for Equality, Inc.

By: _Byron L. Mason_
Byron L. Mason

Byron L. Mason
EQUIP FOR EQUALITY
20 North Michigan Avenue
Suite 300
Chicago, Illinois 60602
312-341-0022

# CERTIFICATE OF SERVICE

Byron L. Mason, an attorney, hereby certifies that he served a copy of the attached Plaintiff Equip for Equality's Motion for Summary Judgment and Plaintiff Equip for Equality's Exhibits in Support of its Motion for Summary Judgment upon David J. Rowland, counsel for Defendant Ingalls Memorial Hospital, by HAND DELIVERING a copy of same to Seyfarth Shaw, 55 East Monroe Street, Suite 4200, Chicago, Illinois 60603-5803 on Tuesday, August 19, 2003 before the hour of 5:00pm.

Byron L. Mason, Esq.