IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 1 2 2004

EQUIP FOR EQUALITY, INC. )
)
Plaintiff, ) No. 03 C 0797
)
v. ) Magistrate Judge Morton Denlow
)
INGALLS MEMORIAL HOSPITAL, )
)
Defendant. )

## NOTICE OF FILING

FILED
JUL 9 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

To: William P. Schurgin, Esq.
Alison B. Willard, Esq.
Seyfarth Shaw
55 East Monroe Street, Suite 4200
Chicago, Illinois 60603-5803

**PLEASE TAKE NOTICE** that on Friday, July 9, 2004 we caused to be filed with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, 219 South Dearborn, Chicago, Illinois 60604, **Plaintiff Equip For Equality's Memorandum In Support Of Its Proposed Order For Access To Ingalls Memorial Hospital**, a copy of which is hereby served upon you.

/s/ Byron L. Mason

Byron L. Mason, Esq.
Equip For Equality, Inc.
11 E. Adams Street, Suite 1200
Chicago, IL 60603
312/341-0022
Telephone: 312/341-0022
Facsimile: 312/341-0295

## CERTIFICATE OF SERVICE

Byron L. Mason, an attorney, hereby certifies that on **July 9, 2004** he served the aforementioned Memorandum in Support of Proposed Order for Access to Ingalls Memorial Hospital on the above named persons by placing a copy of same in the U.S Mail with proper postage prepaid before the hour of 5:00pm.

/s/ Byron L. Mason

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EQUIP FOR EQUALITY, INC. ) | |
| ) | |
| Plaintiff, ) | No. 03 C 0797 |
| ) | |
| v. ) | Magistrate Judge Morton Denlow |
| ) | |
| INGALLS MEMORIAL HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

FILED
JUL 9 2004

PLAINTIFF EQUIP FOR EQUALITY'S
MEMORANDUM IN SUPPORT OF ITS PROPOSED ORDER
FOR ACCESS TO INGALLS MEMORIAL HOSPITAL

NOW COMES Plaintiff, EQUIP FOR EQUALITY (hereinafter "EFE") and submits the following Memorandum of Law In Support Of Its Proposed Order For Access To Ingalls Hospital.

## Introduction

On November 25, 2003, this court permanently enjoined Defendant Ingalls Memorial Hospital from denying EFE reasonable access to the psychiatric units at Ingalls. As the court observed on pages one through two of its Memorandum Opinion and Order, "The federal and Illinois statutes state with remarkable clarity that an entity empowered with the authority granted to EFE should be allowed access to a facility such as Ingalls." The court ordered that the parties meet within 35 days and jointly develop a protocol for access.[1]

---

[1] Shortly after the entry of the November 25, 2003 order, lead counsel for Ingalls, David Rowland, became seriously ill. Consequently, he remained out of the office for an extended period. Initially, the parties anticipated that Mr. Rowland would return and be able to complete this matter. However, it subsequently

The parties have met several times in an attempt to draft a protocol. Regrettably, they have not been able to reach an accord on a joint protocol that is agreeable to both EFE and Ingalls. EFE is therefore submitting its own protocol consistent with the court's opinion.

## I.

## EFE's Proposed Protocol Strikes An Appropriate Balance for Monitoring and Complies with this Court's Order

Within the past year, EFE has visited more than 70 hospitals and other facilities that treat persons with disabilities, including mental illness, without objection or incident. The major area of dispute in this case concerns the degree to which EFE shall be allowed to interview and/or meet with patients while carrying out its monitoring and education roles. Ingalls insists that monitoring, education and interviewing patients are separate and distinct in nature and cannot be combined. Thus, it is Ingalls' position that EFE, while engaged in monitoring of the inpatient psychiatric units, or while fulfilling its education role, cannot converse in any meaningful manner with patients in the inpatient psychiatric units, even those who are adamant about speaking with EFE. Ingalls' position is that under all circumstances, in order to be able to engage in any meaningful conversation with a patient, EFE must make an appointment and wait at least 24 hours.

Ingalls' proposal violates the PAIMI Act and is unrealistic. That Ingalls would continue to maintain a position that severely hampers the ability of EFE to fulfill its statutory obligation to protect the rights of patients is not surprising. As the court will recall, Ingalls was forced to abandon its original (and clearly untenable) position that EFE was not entitled to access to the inpatient units. Ingalls nonetheless urged the court to

---

became clear Mr. Rowland would not be able to continue. William P. Schurgin then assumed the role of lead counsel for Ingalls.

2

impose restrictions that would severely diminish the federal authority granted to EFE to carry out its statutory mandate. In its response to EFE's Motion for Summary Judgment, Ingalls asserted that EFE's presence was largely unneeded. Ingalls alleged EFE's presence would interfere with treatment, that the level of access sought by EFE was not necessary to meet its statutory mandate, and that EFE's activities were duplicative of those performed by other agencies.[2] This court rejected Ingalls' attempt to minimize the importance of the function EFE serves when it correctly observed on page six of its Memorandum Opinion and Order that none of the other agencies that visit Ingalls do so unaccompanied, unannounced or outside regular business hours. Moreover, as the court is aware, EFE's access authority in this context is not triggered by the filing of a complaint. Rather, it exists because of the recognition by Congress of the need to protect the rights of a potentially vulnerable population.

Congress has placed EFE and other Protection & Advocacy systems in a unique and important role. It is up to the court to ensure that a Protection & Advocacy system is able to effectively carry out its role. At page 24 of the Memorandum Order and Opinion, this court noted, "A P&A system must be given leeway to discover problems or potential problems at a facility and raise its level of scrutiny to that of an investigator if necessary." Barring EFE from talking to patients while engaged in monitoring or education, especially with those patients that initiate the conversation, precludes EFE from discovering potential problems. Moreover, one must wonder how EFE could be expected to fulfill the education role at all, since it clearly contemplates a meaningful exchange between EFE and patients.

---

[2] See page nine of Ingalls' Response to Motion for Summary Judgment.

The protocol submitted by EFE balances the interests of the right of patients to access the P&A system with the reasonable concerns expressed by Ingalls. On page five, EFE's protocol provides for the following when EFE is engaged in monitoring:

- That EFE can speak with patients during a monitoring visit;

- That patients have the right to engage in conversation with EFE staff during the course of a monitoring visit;

- That if, in connection with the monitoring function it is necessary to meet subsequently with a patient, EFE will schedule an appointment.

Courts should be ever mindful that hospitals and other facilities that treat patients who are mentally ill are not likely to be self critical. In *Office of Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp.2d 303 (D. Conn. 2003), the court observed that "...Congress passed the Protection & Advocacy for Mentally Ill Individuals Act (PAIMI), 42 U.S.C. SS 10801-108-27, as amended, after finding that individuals with mental illness are vulnerable to abuse, neglect and serious injury and that state systems for monitoring the rights of these individuals vary widely and are frequently inadequate." 266 F.2d 309.

This court should also be mindful that, while EFE was forced to file a lawsuit to gain access to Ingalls, the underlying issue in this case involves ensuring that patients in facilities have access to the P&A system. Several likely scenarios of how Ingalls' attempted restrictions would preclude EFE from fulfilling its statutory obligation easily come to mind.

One such likely scenario that is likely to arise highlights the unreasonable nature of Ingalls' position. If, while at Ingalls for the purpose of carrying out the organization's monitoring or education role, an EFE representative were approached by a patient who

4

makes comments to the effect of, "I need to talk to you right away; there are some things going on here you should know about," the EFE representative would be forced to walk away from the patient, without engaging in conversation.

Clearly, Ingalls' insistence that EFE, when carrying out its monitoring or education function, have such limited contact with patients does not afford the leeway that a P&A system requires to effectively carry out its monitoring or education role. Such restrictions are not reasonable, or even practical. Ingalls would have this court adopt a protocol that protects the interests of the hospital and its staff by imposing unreasonable restrictions on EFE's authority under the PAIMI Act, to communicate with patients. If the court were to adopt Ingalls' rigid interpretation of what monitoring or providing education entails, then under both of the scenarios discussed above, the EFE representative would not be allowed to have a meaningful discussion with or conduct an immediate interview of the patient. Rather, the representative would be required to tell the patient that he or she was required to schedule an appointment to come back and talk to the patient. The soonest a conversation could take place would be 24 hours later, assuming, of course, that Ingalls scheduled the appointment for the following day.

Aside from being contrary to Congressional mandate and unworkable, the restrictions Ingalls insists upon would clearly have a chilling effect on EFE's overall ability to communicate with patients. If a staff member were acting inappropriately toward a patient, a 24-hour delay in speaking to the patient could provide plenty of time to intimidate the patient or simply to convince the patient that there is no need to discuss the perceived violation of rights. Moreover, some patients might be permanently

5

alienated from EFE as a result of the EFE representative's refusal to respond to the patient's immediate needs.

In its proposed order, EFE included the provision that, should it become necessary to have further contact with a patient with whom it is necessary to converse while fulfilling its monitoring or educational role, it will make an appointment. The provisions for further patient contact that EFE included in its protocol demonstrate that it is cognizant of the possible effect the presence of its staff might have on hospital administration. Proceeding in this way outlined in EFE's protocol would allow EFE to gather preliminary information and return for a more detailed discussion, if necessary. The restrictions proposed by Ingalls would negate any benefit of unannounced monitoring and would clearly diminish EFE's ability to communicate with patients while carrying out either the monitoring or educational role. This could not possibly be the result that Congress or this court contemplated.

## II.

### EFE's Current Proposal Regarding Photography HasMade This Issue Moot

Another issue the parties disagreed over was the right of EFE to take photographs while engaged in monitoring. The parties initially contemplated taking photographs of patients and differed with regard to whether patients that might not be able to give consent for any reason could be photographed. Recognizing that the need to photograph patients would most likely arise in cases of suspected abuse or neglect and therefore would not arise in the context or scope of this order, EFE removed any reference to photographing patients from its current proposed order. EFE also modified its proposal

6

to reflect that it would utilize non-flash technology whenever possible to minimize possible disturbance while photographing areas or conditions as allowed by statute.

## III.

### The Remaining Sections of EFE's Proposal Are Reasonable And Should Be Adopted By This Court

On the date the memorandums were required to be filed, the parties differed on various other issues. Ingalls unreasonably refuses to allow EFE access to the nursing stations on the inpatient units, allegedly because they are not accessible to patients. However, EFE reminds the court that the standards set forth in 42 CFR 51.42 are minimum standards and must be regarded as such. Therefore, EFE asks that this court order access to the nursing stations. In the event that Ingalls has safety or other concerns, EFE has suggested that Ingalls staff can be present when EFE accesses the nursing stations.

The parties also differ on the acceptable time frame that a meeting to discuss the refusal to allow a patient to be interviewed must take place. EFE suggests that 24 hours is a reasonable time. Ingalls suggests otherwise.

EFE refused to execute the "waiver" Ingalls demanded that it sign, or to agree to the inclusion of language relating to the "assumption of risk" by its staff. Though it requested that Ingalls provide authority that a waiver or such language is required in order for EFE to fulfill its statutory obligation, Ingalls has not done so.

Finally, EFE included in its proposal a confidentiality agreement. Counsel for Ingalls indicated this provision would be acceptable in the event the parties are able to reach an agreement. Obviously in the event the parties do not ultimately reach an agreement, the provision would be removed.

7

## IV.

### Conclusion

Of the 70 or so hospitals and other facilities that EFE has visited within the past year, only Ingalls refused to acknowledge EFE's federal statutory authority. Patients in hospitals or other facilities have the clear right to communicate with the P&A system, if they desire. A hospital, such as Ingalls, or other facility must never be allowed to impose restrictions that stifle the P&A system and unreasonably restrict the access of patients to that system. The proposed order submitted by EFE is inherently reasonable and takes into account the practical concerns expressed by Ingalls.

WHEREFORE, EFE requests that this court adopt the proposed order for access submitted by EFE, and for such additional or further relief the court considers reasonable.

**EQUIP FOR EQUALITY**

By: _/s/ Byron L. Mason_
Byron L. Mason

**EQUIP FOR EQUALITY, INC.**
20 North Michigan Avenue
Suite 300
Chicago, Illinois 60602
312/341-0022

8