Minute Order Form (06/97)

# United States District Court, Northern District of Illinois


ORIGINAL

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 797 | **DATE** | 8/5/2004 |
| **CASE TITLE** | Equip for Equality, Inc. vs. Ingalls Memorial Hospital | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court adopts the protocol attached hereto and retains jurisdiction to enforce the same. Judgment is entered in favor of Plaintiff Equip for Equality, Inc. and against Defendant Ingalls Memorial Hospital.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | 8/09/04 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 58 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/5/2004 | |
| DK | courtroom deputy's initials | | date mailed notice | |
| | | | DK | |
| | | | mailing deputy initials | |

CLERK, U.S. DISTRICT COURT

2004 AUG -6 PM 7: 15

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED
AUG 0 9 2004

| | | |
|---|---|---|
| EQUIP FOR EQUALITY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03 C 0797 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| INGALLS MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The parties are before this Court on a continuation of this Court's summary judgment decision in order to design a protocol to govern the access to which this Court found the plaintiff is entitled. Plaintiff Equip for Equality, Inc., ("EFE" or "Plaintiff") is the governor-designated, federally-funded Protection and Advocacy System for persons with mental illnesses in Illinois, and is entitled to reasonable unaccompanied access to facilities, patients, and programs within mental health facilities. This Court already has ruled that Defendant Ingalls Memorial Hospital ("Ingalls" or "Defendant") is among those mental health facilities to which EFE is entitled to reasonable unaccompanied access. The primary issue now before the Court is what constitutes "reasonable unaccompanied access." However, the Court also will adopt and impose upon the parties a protocol governing EFE's access to Ingalls for the purposes of monitoring and educating patients and staff at Ingalls, which will incorporate aspects of two competing protocols that the parties have proposed.



# I. BACKGROUND

This Court's opinion in *Equip for Equality, Inc. v. Ingalls Memorial Hospital*, 292 F. Supp. 2d 1086 (N.D. Ill. 2003), recites in great detail the background of this case. Therefore, what follows are the facts and principles materially pertinent to a decision on the issues now before the Court.

EFE demands access to the two inpatient units at Ingalls, which are locked at all times and located on the second floor of the hospital because of the unstable and potentially dangerous nature of the patients housed in those units. These patients receive intensive, highly structured therapy for a duration of twenty-four hours a day for five to ten days at a time. This type of therapy requires a safe, therapeutic environment, with a minimum amount of visitors. Access to these patients is strictly monitored and regulated. Any disruption to a patient's routine and environment could be detrimental to the patient's well-being.

Although both parties have the well-being of the patients in mind, this case arose when the parties were at extreme polar opposites: EFE demanded broad access to the inpatient facilities, residents, and employees at Ingalls, while Ingalls responded with an absolute denial of access. Upon the Plaintiff's motion for summary judgment, this Court held: (1) as a matter of law, Ingalls's complete refusal to allow EFE direct physical access to its inpatient units is in violation of both the United States Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801, *et seq.*, and the Illinois Protection and Advocacy for Mentally Ill Persons Act, 405 ILCS 45/1, *et seq.*; (2) as a matter of law,

EFE is entitled to reasonable unaccompanied access to the inpatient units and the outpatient units at Ingalls, as well as to the patients and the programs therein, during, at a minimum, normal working hours and visiting hours; and (3) EFE is not entitled to judgment as a matter of law on the issue of whether it is entitled to unaccompanied and unannounced twenty-four hour access to the inpatient units and the outpatient units at Ingalls, as well as to the patients and the programs therein, absent a complaint or probable cause.

The Court's decision was the result of an extensive study of the codes, acts, and regulations that govern the Protection and Advocacy ("P&A) System in Illinois. In Illinois, a P&A system has three primary functions: to investigate, to educate, and to monitor. The scope of EFE's right to access facilities, residents, and employees is different under each one of these circumstances, with the scope being broadest while a P&A system performs its investigatory function, which is not at issue in this case. Likewise, there is a distinction between the right of access for monitoring purposes versus the right of access for educational purposes. When a P&A system is exercising its monitoring function, it is reasonable for it to be more intrusive and invasive than when it is exercising its educational function.

There also exists a distinction between the right of access to facilities versus the right of access to patients. Thus, EFE is allowed unannounced and unaccompanied access to the inpatient units at Ingalls only where such visits will not substantially interfere with the treatment of the patients, who are extremely unstable, sometimes volatile, sensitive to the slightest change in their environments, and subject to intensive, highly structured, continuous

3

care for days at a time. EFE ordinarily is not entitled to unannounced and unaccompanied twenty-four hour access to the inpatients at Ingalls, unless such access becomes necessary to accomplish its functions of monitoring or educating.

After outlining these legislatively created guidelines, the Court ordered the parties to meet and to develop a protocol within thirty-five days, consistent with this Court's decision. Eight months later, the parties have made substantial progress and have reached agreement on most issues, but not all. A controversy still exists as to the extent of access to which EFE is entitled. As a result, the parties have submitted to the Court two separate protocols, from which the Court has crafted a single protocol that is binding upon the parties.

## II. JURISDICTION

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the federal United States Protection and Advocacy for Individuals with Mental Illness Act.

## III. DISCUSSION

Each party has submitted its own proposed protocol for consideration by this Court. Consequently, there are several disagreements remaining between the parties. Those disagreements include the following:

1. The greatest point of contention is whether EFE is entitled to unaccompanied and unannounced interviews with patients or whether Ingalls is entitled to a twenty-four hour evaluation period of a patient prior to EFE meeting with that patient. Related is whether EFE

4

should commit to some specific hours of access, as opposed to retaining discretion to conduct twenty-four hour access as it deems necessary;

2. Whether EFE should refrain from entering Ingalls's nursing stations;

3. Whether EFE should specially agree to refrain from photographing patients absent the patient's consent or EFE's probable cause to suspect abuse or neglect, rather than leaving the protocol silent on photography of patients;

4. Whether EFE should acknowledge its assumption of the risk inherent in entering Ingalls's locked inpatient psychiatric units, as well as its own duty of care during access; and

5. Whether the access protocol should be a matter of public record or should remain confidential.

Oral argument on these issues was held on July 19, 2004. The Court now will address each issue in turn.

## A.    ACCESS TO PATIENTS

EFE proposes that its staff may speak with patients and patients may engage in conversation with EFE staff who may be in the process of monitoring the facility or educating the staff and patients. Furthermore, if it is necessary to meet subsequently with a patient as a result of a conversation, then EFE will work with the unit staff at Ingalls to arrange the meeting. EFE's concern is that if a patient expresses a dire and immediate need to talk to an EFE representative, that representative should be able to speak with that patient as soon as possible and should not have to walk away and risk alienating that patient. Both

parties expect and accept the fact that there will be naturally occurring interaction between EFE representatives and patients, but EFE demands the leeway to have detailed, meaningful conversations with patients despite the absence of probable cause, which otherwise would trigger EFE's broad investigatory authority. For example, without triggering probable cause, a patient could say to an EFE representative: "I need to talk to you right away because I am having problems with the staff." In such an instance, EFE claims the need to discover, for example, whether the problem is that the staff is not giving the patient bubble gum or that the staff is giving the patient beatings. Additionally, EFE claims that immediate attention to patients is necessary because patients tend to change their minds and to shy away from talking, either because they no longer feel comfortable speaking to EFE representatives or they feel intimidated by Ingalls staff.

The specific language that EFE proposes is as follows:

> In the event that a patient requests to immediately meet privately with EFE staff during a monitoring visit, EFE will work with unit staff to ensure that such a meeting can take place without adversely affecting the patient's treatment or resulting in any immediate danger to the patient or EFE or Ingalls staff.

EFE employs substantially the same language in instances where a similar circumstance arises while it exercises its educational role.

Ingalls objects to this language, concerned that unscheduled sustained contact with patients could create serious dangers to patient treatment. Because Ingalls fears that natural interaction could become a potentially disruptive interview, Ingalls proposes that substantial

6

patient interaction can not be conducted before a twenty-four hours waiting period has expired. Moreover, Ingalls requires that treating physicians or patients' families or guardians, rather than unit staff, be contacted prior to patients' contact with EFE. It proposes the following language:

> Both EFE and Ingalls recognize that access to facilities for purposes of monitoring is separate from access for the purpose of conducting an interview with a patient. Likewise, both EFE and Ingalls also recognize that limited contact with patients by EFE representatives that are conducting monitoring is unavoidable. Therefore, while EFE shall have the right to limited interaction with patients while conducting monitoring, EFE shall avoid engaging in any lengthy or probing contact or conversations with patients while carrying out its monitoring functions and shall not conduct patient interviews. EFE also recognizes its duty to respect patients' privacy, minimize interference with treatment and avoid any situations that could result in harm to the patient or others while carrying out its monitoring function.

The Court agrees that EFE should be permitted to initiate contact with patients in a casual and natural manner while it is performing its monitoring and educating functions. Such naturally occurring activity is reasonable. If, within the course of its natural interaction with a patient, EFE determines that it should interview a patient despite a lack of probable cause, then it is reasonable for EFE to work with unit staff to ensure the well-being of all involved. Especially when a patient initiates contact with EFE and expresses an urgent and dire need to speak with EFE, the Court recognizes that the situation is potentially serious. In such instances, EFE should have the ability to maintain contact with the patient and to conduct private conversation sooner rather than later; waiting twenty-four hours would be

inappropriate, especially because EFE has the right to immediate access when it is necessary to accomplish its function of monitoring.

Finally, for monitoring purposes EFE demands access to Ingalls's facilities outside scheduled business or visiting hours. Ingalls objects to this demand. The Court finds that this demand is consistent with the codes, acts, and regulations governing the P&A System in Illinois, which set normal business and visiting hours as minimum requirements for access. Moreover, surprise is an element of effective monitoring, and the more hours of access EFE has the more effectively EFE can perform its monitoring function. EFE must have the ability to discover whether, during off-hours, adequate staff is present at Ingalls, whether the staff is available to unlock the door to allow entry into the facilities, and, for example, whether the staff is watching television in the break room instead of doing its rounds. There is, of course, a concern with patient well-being, especially during normal sleeping hours. EFE, however, is a specialized agency presumably capable of not interfering with treatment procedures while performing its congressionally mandated monitoring function, and the Court has no reason to suspect that EFE has abused its authority in the past or intends to abuse its authority in the future.

EFE insists upon twenty-four hour access to Ingalls because it does not want to barter away its congressionally granted right to that access. Congress, however, set minimum, not maximum, guidelines for unaccompanied access to facilities such as Ingalls, requiring that access beyond those minimums be reasonable. This Court, therefore, finds that twenty-four

hour access to Ingalls in this case is not necessarily reasonable and consequently limits EFE's access to Ingalls to the hours between 6:00 a.m. and 12:00 a.m. (midnight).

## B. ACCESS TO NURSING STATIONS

EFE demands access to the Ingalls nursing stations, where patient records and medications are stored, and states that it is amenable to accompanied access. Initially, EFE provided no practical reason for access to these stations. At oral argument, however, EFE stated that its reasons for access to the stations are to be able to talk to staff and to be able to check the security of the medications, but not to gather patients' records. Once satisfied with the security of the stations, EFE claims that it does not anticipate a need to re-inspect the stations. Ingalls objects to this access as being unreasonable because the stations are locked and inaccessible to patients. Nonetheless, the regulations do not limit access to those areas accessible to patients but rather states that a "P&A system shall have reasonable unaccompanied access to public and private *facilities* and programs in the State which render care or treatment for individuals with mental illness, *and* to all *areas* of the facility which are used by residents or are accessible to residents." 42 C.F.R. § 51.42(a) (emphasis added). This language evidences that Congress intended the benefit of the doubt with respect to access to go to EFE. Therefore, EFE shall have access to the nursing stations. At oral arguments, the parties agreed that EFE shall have access to the nursing stations and that Ingalls shall have the right to accompany EFE into the stations. The parties also agreed to the following language to govern access to the nursing stations:

9

Upon request by representatives of EFE, Ingalls staff shall provide access to the nursing stations located on the inpatient psychiatric units. Ingalls staff shall be allowed to accompany EFE staff who request access to the nursing stations.

The Court therefore adopts this language.

## C. SPECIAL AGREEMENT TO REFRAIN FROM PHOTOGRAPHY

Ingalls insists that EFE should specially agree to refrain from photographing patients absent the patient's consent or EFE's probable cause to suspect abuse or neglect. It proposes the following language:

EFE shall have the right to take photographs of all such areas. EFE shall have the right to take photographs of patients under strict guidelines. EFE shall be allowed to take photographs of any patient with the consent of the patient. If the patient is not able to give consent, EFE may only take photographs of the patient if it has probable cause to believe that an incident of abuse of neglect may have occurred or that there is an imminent threat of abuse or neglect to a patient. EFE shall conduct any photographing of patients or facilities in the most unobtrusive manner possible, including the use of cameras that utilize non-flash technology whenever possible.

EFE, on the other hand, prefers to leave the protocol silent on photography of patients.

It proposes the following language:

When carrying out its monitoring function, EFE may inspect, view and photograph the areas to which it has access to ensure patients' rights and safety. EFE shall conduct any photographing of the facilities in the most unobtrusive manner possible, including the use of cameras that utilize non-flash technology whenever possible.

During oral argument, the Court ruled that the language proposed by Ingalls was more precise and substantively adopted it without objection from EFE.

10

**D.    ACKNOWLEDGMENT OF ASSUMPTION OF RISK AND DUTY OF CARE**

Ingalls requests EFE to acknowledge that it has assumed the risks inherent in unaccompanied access to the inpatient facilities at Ingalls and that it has a duty of care to the inpatients. The Court rejects this request because whether EFE assumes the risk and has a duty of care is governed by well-established common law. The law is what it is, and the Court will not force EFE into an unnecessary acknowledgment of its assumptions of risks and duties of care.

**E.    CONFIDENTIALITY AGREEMENT**

EFE requests that the parties agree that the protocol adopted in this case is confidential. The Court rejects this request. The rights of P&A systems is a nation-wide issue, and the Court hopes that the protocol developed in this litigation will not only resolve this ongoing dispute between the parties but also will serve as a guide for P&A systems and facilities that care for the mentally ill throughout the country.

## IV.  ADOPTION OF PROTOCOL

At oral argument, the Court ordered the parties to create and to deliver to chambers within twenty-four hours of the hearing a single protocol with neutral language incorporating not only the language on the issues that were resolved at oral argument but also competing language on two discreet issues that the Court did not decide from the bench: (1) the hours of access for monitoring; and (2) the degree of access to patients during monitoring. The parties failed to comply with that order, choosing to submit to chambers two separate

protocols that, while being seemingly similar in concept, are subtly different in organization, verbiage, and nuance.

Throughout this litigation, the Court has encouraged the parties to cooperate and to assist the Court in creating a protocol that is agreeable to both parties. Although the parties apparently have worked well together, they ultimately have failed to produce one joint protocol with agreed upon language, despite having merely one or two substantive differences of opinion. Therefore, this Court has created from the parties' competing submissions a protocol to govern the parties. The time has come for the dispute between the parties to end so that they may continue to champion for their one common goal, the best interests and well-being of those afflicted with mental illnesses.

## V. CONCLUSION

For the reasons set forth in this opinion, **the Court adopts the protocol attached hereto and retains jurisdiction to enforce the same. Judgment is entered in favor of Plaintiff Equip for Equality, Inc. and against Defendant Ingalls Memorial Hospital.**

**SO ORDERED THIS 5th DAY OF AUGUST, 2004.**

_Morton Denlow_
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Byron L. Mason
EQUIP FOR EQUALITY, INC.
20 North Michigan Ave., Suite 300
Chicago, Illinois 60602

Counsel for Plaintiff

David L. Rowland
William Schurgin
Alison B. Willard
SEYFARTH SHAW LLP
55 E. Monroe Street, Suite 4200
Chicago, Illinois 60603

Counsel for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EQUIP FOR EQUALITY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03 C 0797 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| INGALLS MEMORIAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## PROTOCOL

In furtherance of this Court's November 25, 2003 order and this Court's memorandum opinion entered August 5, 2004, the parties, Equip for Equality, Inc. ("EFE") and Ingalls Memorial Hospital ("Ingalls"), shall adhere to the following protocol when EFE seeks to enforce its federal access mandate pursuant to 42 C.F.R. § 51.42(c) and (d), the relevant statutory provisions in this case.

1.      42 C.F.R. § 51.42(c) provides in relevant part as follows:

**(c) In addition to access as prescribed in paragraph (b) of this section, a P&A system shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. . . . P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a resident's request to terminate an interview. This access is for the purpose of:**

> **(1)      Providing information and training on, and referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights**

> and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.
>
> **(2)** Monitoring compliance with respect to the rights and safety of residents; and
>
> **(3)** Inspecting, viewing and photographing all areas of the facility, which are used by residents or are accessible to residents.

Section (d) provides as follows:

> Unaccompanied access to residents shall include the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person. Residents include minors or adults who have legal guardians or conservators.

2. Ingalls, by and through its administrators, legal representatives and other personnel, including but not limited to the Department of Psychiatry, recognizes that EFE, as the Protection and Advocacy System for Illinois ("P&A"), has the right to reasonable physical access to the inpatient psychiatric units and to the patients/residents in the inpatient psychiatric units at Ingalls for the purposes of (1) monitoring for patient safety and for protection of patients' rights and (2) providing education to residents, their family members or guardians, and Ingalls staff regarding patients' rights and needs and the availability of P&A services and programs. Likewise, EFE recognizes the impact that its staffs' presence can have upon individuals with disabilities when those staff access facilities in which individuals live or receive services. EFE is particularly cognizant of the acuity level of any

setting and the need to conduct its activities in such a way so as to ensure the least amount of disruption to or interference with programs and treatment being rendered and to ensure that patients' rights and privacy are fully respected and protected. EFE representatives will at all times conduct their activities in a fashion that addresses these concerns during any monitoring or training visit to Ingalls so that the interference with programs and the intrusion into patient privacy are minimized.

## ACCESS GOVERNED BY THIS PROTOCOL

3.    Both parties recognize and acknowledge that this protocol does not govern EFE access to any facilities other than the inpatient psychiatric units at Ingalls.

4.    This protocol shall govern access to the inpatient psychiatric units at Ingalls for the purposes of monitoring and educating pursuant to 42 C.F.R. § 51.42(c) and (d), or any similar state statute or regulation. This protocol does not govern EFE access to records or any other form or manner of access authority conferred upon EFE as the P&A, and does not govern any situation in which access by EFE to the inpatient psychiatric units is based on any allegation of abuse or neglect, a reported incident, any determination by EFE that probable cause exists to believe that an incident may have occurred, any situation involving imminent danger of abuse or neglect to an individual with mental illness, or any other situation where EFE as the P&A system has authority to act in accordance with its federal mandate.

## ACCESS FOR MONITORING PURPOSES

### A.    Access to facilities

5.    EFE shall be granted unannounced and unaccompanied access to the inpatient units at Ingalls during the hours from 6:00 a.m. to 12:00 a.m. (Midnight) Monday through Sunday, including holidays.

6.    EFE has the right to unannounced and unaccompanied access to the inpatient psychiatric units at Ingalls, including all areas that are used by residents or are accessible to residents.  EFE shall not be required to provide advance notice of any visit made for the purpose of carrying out its monitoring function.  When exercising its monitoring function, EFE may inspect and view the areas to which it has access.  EFE shall have the right to take photographs of all such areas.  EFE shall conduct any photographing of facilities in the most unobtrusive manner possible, including the use of cameras that utilize non-flash technology whenever possible.

7.    Ingalls has represented that the nursing stations located on the inpatient psychiatric units are locked and not accessible to patients of the psychiatric units.  However, upon request by representatives of EFE, Ingalls staff shall provide access to the nursing stations located on the inpatient psychiatric units.   Ingalls staff shall be allowed to accompany EFE staff who request access to the nursing stations.

8.    A representative of EFE may exercise the organization's statutory authority to investigate or to take further action as appropriate if during a visit made for the purpose of

monitoring the representative observes irregularities or improprieties or determines that probable cause to take further action exists.

**B.  Access to Patients**

9.  While carrying out its monitoring function, EFE shall exercise care not to disturb patients while they are receiving treatment or are involved in therapy sessions. However, the parties acknowledge and agree that during the course of a monitoring visit, conversations between EFE staff and patients naturally occur and may in fact be necessary to effectively carry out the monitoring function. The parties also acknowledge and agree that patients have the right to engage in conversation with EFE staff during the course of a monitoring visit and that EFE has the right to speak with patients. In the event that a patient requests to meet privately and immediately with EFE staff during a monitoring visit, EFE will work with unit staff to ensure that such a meeting can take place without adversely affecting the patient's treatment or resulting in any immediate danger to the patient or EFE or Ingalls staff. Such an unscheduled and urgent meeting shall last no longer than one hour.

10.  If in connection with the monitoring function it is necessary to schedule a meeting with a patient at a later date, in order to minimize interference with programs, EFE will utilize the procedures outlined at paragraphs 17 to 25, below (Scheduling Meetings and Interviews with Patients).

11.  EFE shall have the right to take photographs of patients under the following strict guidelines. EFE shall be allowed to take photographs of any patient with the consent

of the patient. If the patient is not able to give consent, EFE may take photographs of the patient only if it has probable cause to believe that an incident of abuse or neglect may have occurred or that there is an imminent danger of abuse or neglect to a patient. EFE shall conduct any photographing of patients in the most unobtrusive manner possible, including the use of cameras that utilize non-flash technology whenever possible.

## ACCESS FOR EDUCATING PURPOSES

### A.    Access to facilities and staff

12.    EFE shall have physical access to the inpatient psychiatric units at Ingalls for the purpose of distributing literature and meeting with and/or training Ingalls staff, or to provide informational materials to patients and/or their family members or guardians.

13.    EFE shall provide Ingalls with at least fourteen (14) days advance notice before its representatives arrive at Ingalls to conduct trainings of staff. EFE shall provide training and distribute literature during normal business or visiting hours (see ¶18 & n.1), unless otherwise mutually agreed upon by EFE and Ingalls. In both instances, EFE shall give notice to the Director of Psychiatry or to the Medical Director. All training shall be scheduled at a time mutually agreed upon between Ingalls and EFE.

14.    Ingalls understands and acknowledges that representatives of EFE may immediately exercise the organization's statutory authority to take further action as appropriate if, during a visit for the purpose of educating patients, training Ingalls staff, or for the purposes of distributing written information for the benefit of patients, the

6

representative observes irregularities or improprieties or determines that probable cause to take further action exists.

**D. Access to Patients**

15. EFE will provide Ingalls with at least forty-eight (48) hours advance notice before its representatives arrive at Ingalls to conduct trainings of or to distribute literature to residents. EFE and Ingalls agree to coordinate the scheduling of any training for patients and family members in order to maximize the number of individuals able to be present, to ensure that those present are able to benefit from the training, and to minimize interference with patients' programming or treatment needs. Training for patients and their family members or guardians shall occur during normal business or visiting hours (see ¶18 & n.1).

16. The parties acknowledge and agree that during the course of training activities, conversations between EFE staff and patients naturally occur and may in fact be necessary to provide effective and informative trainings, particularly when participants have questions. The parties also acknowledge and agree that patients have the right to engage in conversation with EFE staff during a training and that EFE has the right to speak with patients. In the event that a patient requests to meet immediately and privately with EFE during an educating visit, EFE will work with unit staff to ensure that such a meeting can take place without adversely affecting the patient's treatment or resulting in any immediate danger to the patient or EFE or Ingalls staff. Should a subsequent meeting with a patient be required, EFE will

utilize the procedures outlines at paragraphs 17 to 25, below (Scheduling Meetings and Interviews with Patients).

## SCHEDULING MEETINGS AND INTERVIEWS WITH PATIENTS

17.    EFE shall have the right to meet privately with patients. Both Ingalls and EFE acknowledge and agree that any meeting with a patient is contingent upon the patient's consent, and that the patient can terminate the meeting at any time.

18.    EFE shall schedule meetings with individual residents during normal business hours (9:00 a.m. to 5:00 p.m., Monday through Friday), or during regular visiting hours for the general psychiatric unit or the gero-psychiatric unit,[1] unless notified by Ingalls that meeting with a specific patient during these times would be disruptive to the patient's normal activities. In that instance, the visit will be rescheduled at a time to be agreed upon by EFE and Ingalls. Ingalls shall provide any additional staff needed for a meeting or interview to be convened after normal business hours at a time other than regular visiting hours for the general psychiatric or gero-psychiatric units.

---

[1]Visiting hours in the general psychiatric unit are:

| Tuesday and Thursday | 6:00 p.m. - 7:30 p.m. |
|---|---|
| Saturday and Sunday | 2:00 p.m. - 4:00 pm., and |
|  | 6:00 p.m. - 7:30 pm. |
| Holidays | 2:00 p.m. - 7:30 p.m. |

Visiting hours in the gero-psychiatric unit are:

| Saturday and Sunday | 1:00 p.m. - 2:00 p.m., and |
|---|---|
|  | 6:00 p.m. - 7:30 p.m. |
|  |  |
| Holidays | 2:00 p.m. - 7:30 p.m. |

19.     EFE will initiate meetings with patients by placing a telephone call to the Director of Psychiatry or to the Medical Director at Ingalls to schedule such meetings. EFE will request the interview by patient name(s), if known, or by patient identification number(s). Upon request by EFE, the Director of Psychiatry will provide EFE with a current list of the patient identification numbers of all residents of the units; Ingalls will comply with the request within twenty-four (24) hours. EFE will not need to disclose the substance of any topic to be discussed during a meeting with any patient. Ingalls will ensure such a meeting will take place no later than twenty-four (24) hours after the request is made.

20.     Upon a request by EFE to meet with a patient, the Medical Director (who at all times is a treating physician) will schedule a specific time for the patient to meet with EFE representatives, taking into primary consideration the patient's health and safety. EFE representatives will interview or meet with a resident in a private room provided by Ingalls in a central location. Where the meeting takes place will be dictated by the medical needs of the resident as determined by the Medical Director or the patient's treating physician.

21.     If the resident is exhibiting "high risk symptoms" that in the opinion of the Medical Director and the patient's treating physician would prevent the patient from being able to communicate coherently, or which symptoms constitute an immediate danger to the patient's treatment or health, and/or the safety of the staff of Ingalls and/or EFE, special procedures will apply. Patients who potentially may be "high risk" are those with schizophrenia or severe depression, and patients who may be suicidal, homicidal, manic,

9

extremely paranoid, delusional, combative, violent, or otherwise extremely unstable, volatile, and/or sensitive to the slightest change in their environment. It will be the responsibility of the patient's treating physician and the Medical Director to determine whether a patient is exhibiting high-risk symptoms and, if so, what special procedures or conditions will be necessary for access.

22.   In the event that a patient is unable to meet with EFE staff for health or safety reasons, the Medical Director shall meet with EFE within thirty-six (36) hours of EFE's initial request for a meeting, at which time the treating physician or the Medical Director will provide EFE with a written statement explaining why the patient is not capable of being interviewed. The statement shall include when, in the opinion of the Medical Director or the treating physician, the patient will be able to be interviewed. If EFE disagrees with the explanation about the resident exhibiting high-risk symptoms, it shall notify the Medical Director and request a meeting. Within forty-eight (48) hours of EFE's initial request for a meeting, the Medical Director and/or treating physician shall meet with EFE. The purpose of the meeting will be to develop conditions for the interview of the resident exhibiting high-risk symptoms that are acceptable to EFE and that will not substantially interfere with the treatment of the resident. If the meeting does not yield mutually acceptable conditions for the interview, EFE shall have the right, with notice to the general counsel at Ingalls, to seek the intervention of the United States District Court for the Northern District of Illinois, which has retained jurisdiction to enforce this Order.

23.     EFE and Ingalls agree that subsequent meetings between patients and EFE staff will be scheduled during normal business hours or during regular visiting hours for the general psychiatric unit or the gero-psychiatric unit, unless notified by Ingalls that meeting with the patient identified by EFE during these times would interfere with necessary treatment activities. In that instance, the visit will be rescheduled at a time to be agreed upon by EFE and Ingalls. Ingalls shall provide any additional staff needed for a meeting or an interview to be convened after normal business hours at a time other than regular visiting hours for the general psychiatric or gero-psychiatric units.

24.     Where the subsequent meeting takes place will be dictated by the medical needs of the patient as determined by the Medical Director or the patient's treating physician. At the request of the patient, the patient's treating physician (or another physician designated by the treater), legal guardian, or family member may be present at the meeting. Ingalls shall inform the patient of this right prior to the patient's meeting with EFE and shall contact the individual requested by the patient. If such individual is unavailable, the meeting shall not proceed absent the patient's consent to a private meeting after being informed of the unavailability of the requested individual. Ingalls shall notify EFE of the patient's refusal to meet privately with EFE. Ingalls shall make good faith efforts to maintain contact and make meeting arrangements with the requested individuals.

25.     If the patient's treating physician and the medical director determine that a patient is exhibiting such high risk symptoms that participation in a subsequent scheduled

meeting with EFE staff will present an immediate danger to the patient's treatment or health, or to the staff of Ingalls or EFE, the treating physician or medical director will identify what special procedures or conditions will be necessary for such a meeting. In the event that a patient is unable to make a subsequent scheduled meeting with EFE staff for health or safety reasons, the procedures set for in paragraph 22, above, shall take effect.

## ENFORCEMENT

26.    This Court shall retain jurisdiction for the purpose of enforcement.

**ENTERED THIS 5th DAY OF AUGUST, 2004.**

By: _____
        **MORTON DENLOW**
        **UNITED STATES MAGISTRATE JUDGE**